UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| Julia Hagans, mother of Plaintiffs' decedent, )<br>Rufus Lee, as a surviving parents and )<br>one of several next of kin, )<br>)<br>Julia Hagans, in a representative capacity for the )<br>now deceased father, and next of kin, )<br>Solomon Lee, Sr, and his heirs and next of kin, )<br>the adult siblings of Rufus Lee, namely )<br>Solomon Lee, Jr., Henry Lee, Quaneisha Tribble )<br>and Janeisha Page, )<br>)<br>Julia Hagins, in a representative capacity as a )<br>putative personal representative of the estate )<br>of Rufus Lee, )<br>)<br>    Plaintiffs, )<br>)<br>  v. )<br>)<br>Timothy Ward, )<br>Commissioner, Georgia Department of Corrections, )<br>individually, as a policy maker and as a supervisor )<br>acting under color of state law. )<br>)<br>Brooks Benton, )<br>Warden, Coastal State Prison, )<br>individually, as a policy maker and as a supervisor )<br>acting under color of state law, )<br>)<br>Michael Anderson, )<br>Deputy Warden, Security, Coastal State Prison, )<br>individually, as a policy maker and as a supervisor )<br>acting under color of state law, )<br>)<br>Carl Betterson, )<br>Deputy Warden Care and Treatment )<br>Coastal State Prison, individually, as a )<br>policy maker and as a supervisor acting )<br>under color of state law, )<br>)<br>Phillip Glenn, )<br>Deputy Warden Administration, ) | CIV. ACT. NO. _____<br>Complaint<br>Damages<br>Jury trial requested |

1

| | |
|---|---|
| Coastal State Prison, individually, as a policy maker and as a supervisor acting under color of state law, | ) ) ) ) |
| Supervisor John and Jane Does, whose true names and numbers are unknown, individually, as de facto policy makers and as a supervisor acting under color of state law, | ) ) ) ) ) |
| Frontline correctional officer John and Jane Does, whose true names and numbers are unknown, individually, as de facto supervisors and policy makers, acting under color of state law, | ) ) ) ) ) |
| All individually and jointly, | ) ) |
| Defendants. | ) ) |

## COMPLAINT

COMES NOW, Plaintiffs, who show the Court the following.

### Introduction and Summary

### Filing to Preserve Rights and Protect the Parties' Interests

1. Because Rufus Lee was killed, and attempts to obtain evidence and information under the Georgia Open Records Act ("ORA"), about the deliberate indifference of unknown supervisors and front line officers at Coastal State Prison, and how the shortage of guards attributable to upper level management, contributed to the conditions of substantial risk caused by the prison's supervisors and guards that led to the stabbing death of Lee while in his housing are and cell that should have been secure, have been prevented under the investigation and prosecution exemptions of the ORA.

2. Claim I is to assert access to evidence to plead plausible claims on the merits and preserve the right to meaningful access to courts under the First amend., the right to jury trial under the Seventh amend. and the right to due process and equal protection under the Fourteenth amend.

2

3. The running of the statute of limitations for all claims should be tolled during any investigation and prosecution as matter of equitable tolling under 42 U.S.C. § 1983, and because of O.C.G.A. § 9-3-92, which tolls claims "brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the crime," where attempts to get documents relating to actions or failures to act of supervisors and corrections officials under the Georgia Open Records Act have been rejected under the investigational and prosecution exception.

4. In June 2022 Counsel sought records of the investigation of the murder from the GBI and was referred to Chatham County Sheriff, and the investigation exception was referenced.

5. The four individuals directly involved in the assault and stabbing that this case contends was the cause of deliberate indifference of the named and unnamed defendants, were indicted in 2022, and the DA's office of Chatham County is withholding reports of investigations, and they will not be producing such documents as of December 11, 2023.

6. Any claim on behalf of the estate should be tolled during the period of the unrepresented estate and until a permanent administrator is appointed, the tolling should continue, but not outside of the statute of repose internal to the statute. O.C.G.A. § 9-3-92.

**Jurisdiction and Venue**

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action asserts one or more deprivations of federal constitutional rights under color of law.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims under Georgia law because the facts supporting the state claims arise from the same or similar facts supporting and form at least part of the same case or controversy under Article III.

9. Venue is proper within the Savannah Division because many of the challenged actions and refusal to act reasonably in the face of known substantial risks and danger, occurred in Chatham County, at Coastal State Prison.

**Parties**

10. Plaintiff Julia Hagans, mother of Plaintiffs' decedent, Rufus Lee, as a surviving parents and one of several next of kin.

11. Plaintiff Julia Hagans, in a representative capacity for the now deceased father, and next of kin,

12. Solomon Lee, Sr, and his heirs and next of kin, the adult siblings of Rufus Lee, namely Solomon Lee, Jr., Henry Lee, Quaneisha Tribble and Janeisha Page.

13. Plaintiff Julia Hagins, in a representative capacity as a putative personal representative of the estate of Rufus Lee.

14. Defendant Timothy Ward, Commissioner, Georgia Department of Corrections, individually, as a policy maker and as a supervisor acting under color of state law.

15. Defendant Brooks Benton, Warden, Coastal State Prison, individually, as a policy maker and as a supervisor acting under color of state law.

16. Defendant Michael Anderson, Deputy Warden, Security, Coastal State Prison, individually, as a policy maker and as a supervisor, acting under color of state law.

17. Defendant Carl Betterson, Deputy Warden Care and Treatment Coastal State Prison, individually, as a policy maker and as a supervisor acting under color of state law.

18. Defendant Phillip Glenn, Deputy Warden Administration, Coastal State Prison, individually, as a policy maker and as a supervisor acting under color of state law.

19. Defendant Supervisor John and Jane Does, whose true names and numbers are unknown, individually, as de facto policy makers and as a supervisor acting under color of state law,

20. Defendant Frontline correctional officer John and Jane Does, whose true names and numbers are unknown, individually, as de facto supervisors and policy makers, acting under color of state law.

21. All Defendants are sued individually and jointly.

**Facts**

22. The shortage of front line correctional officers in the Georgia Department of Corrections has been a chronic condition since 2017, and is reported in the press. . https://theintercept.com/2021/08/30/georgia-prison-guard-shortage-killing-incarcerated-people/

23. "In 2017, the Georgia Department of Corrections reported four homicides. Last year it reported 26." "Prisons across the state are operating with as little as one-quarter of the necessary staffing now. In some cases, a single guard might be left to watch dozens of people."

    24. Staff Shortages in Georgia Prisons Reach Crisis Levels.Prison Legal News. Jun 1, 2021 — Staff shortages stem, in part, from GDDC's inability to retain guards. ... Georgia's prison system, GDDC's staff shortages have become magnified. https://www.prisonlegalnews.org › news › jun › staff-s...

25. "On August 11, [2021] the one-year anniversary of Ware State Prison's last riot, a dispute over food led to two correctional officers being stabbed by a person incarcerated at the prison. One of the guards, Julian Rector, remains in a coma." George Chidi August 30, 2021.

26.  Upon information and belief, there is information and evidence in the control of

    The Defendant upper managers like the Commissioner Ward, and those at Coastal and the institution are in the unique position in the control of documents that could have been part of the documents of the investigation that were withheld or are otherwise in the control of the Defendants, that show that during the months and years preceding the assault of Plaintiff that immediately preceding the assault they were aware of a high number of assaults, that weapons were coming in through work crews and other means and were being used in assaults, there was a high number of assaults by inmates out of the assigned location, that lock security of housing units and cells was not being maintained causing high assaults, but Plaintiff will not have access to such information without discovery, and without interference with the current prosecution of the four individuals who were able to breach security and contraband rules to assault other inmates at Costal and Plaintiff on December 14, 2021.

27. Rufus Lee had discussed particular danger to him with a counsellor whose name may be Jennifer Brooks, who counsel has been unable to locate.

Claim I

28. Counsel has tried to get information to provide more specific detail of how acts or failures to act of persons acting under color of law could have caused the challenged assault, by using the Georgia Oppen records Act, but the GBI, Departmet of Corrections and the DA's office of Chatham County have asserted the investigation and prosecution to prevent disclosure of such documents.

29. Rufus Lee is dead.

30. The four individuals who killed him are under indictment and are likely to assert the Fifth until their criminal jeopardy is over.

31. Therefore they will not answer questions about how they were able to breach security and have a weapon, that would implicate failures of duty of frontline officers and supervisors whose names are not known.

32. The investigation of the GBI or the DOC, will only be a starting point, because the focus is to convict the inmates, not disclose or discover the acts and failures to act of the guards, supervisors and the Deputy Wardens, Warden and nor the Commissioner relative to guard shortages and security breaches.

Claim II

33. Claim II is for the pre-death pain and suffering for deprivation of the right to maintain bodily integrity and not to be exposed to one or more substantial risks of harm including likely attack by other inmates, with a weapon, in what should have been a secure housing area and cell, to which the state and defendants have assigned Plaintiff, otherwise restricting his ability to be any other place.

34. Claim II is brought by the estate, through Julia Haggins in her representative capacity.

35. It asserts that one or more of the frontline correctional officers and their officer supervisors, whose names are not known were deliberately indifferent to substantial risks of harm that caused Rufus Lee to be attacked by four inmates, with a knife or who had steel object, while in his housing area and his cell that should have been secure, but for indifference or intentional acts of the defendant unknown officers that caused the creation of the conditions that posed and were a substantial risk of harm to plaintiff and caused him physical injury, conscious pain and suffering after the attack but before his death.

36. Claim II also asserts that upper management of Defendants Commissioner Ward, Coastal Warden Benton, Anderson - Deputy Warden of Security at Coastal, Betterson - Deputy Warden of Care and Treatment and Glenn - Deputy Warden Administration were aware of the substantial risk of harm created by the chronic shortage of correctional officers, which allowed inmates on work details to steal and purloin metal objects from work detail, because there were insufficient guards to oversee the safe control of objects that could be turned into weapons.

37. In the alternative the unknown supervisors and front line officers were deliberately indifferent to facts and reasonably drawn inferences in light of the circumstances that

inmates on work details were stealing contraband equipment to turn into shanks and knives that would foreseeably be used to stab other inmates, as occurred to Rufus Lee.

38. In the alternative one or more supervisors or unknown frontline officers were turning a blind eye to inmates stealing metal objects that could be used to make shanks and knives.

39. Upper management defendants were aware that the correctional officer shortage created a substantial risk of danger by the inability to conduct a sufficient number and frequency of cell searches for weapons and other contraband like drugs and cell phones that created a dangerous condition of commerce unregulated by the guards leaving inmates to police the disputes of inmate commerce.

40. Alternatively, supervisor and frontline guards, were not conducting cell searches as frequently as directed nor in a manner that prevented substantial risk of attacks with knife-like weapons, allowing inmates to anticipate cell searches and hide weapons in other cells or to hide weapons if searched.

41. Alternatively, one or more front line officers or guards or supervisors turned a blind eye to certain inmates' possession of weapons because the short-staffed guards had to count on the inmates to police other inmates.

42. Due to the short staffing, caused by the upper management defendants, they knew that housing unit door and sally port security was at substantial risk of causing preventable assaults from the frequent assaults involving instances where lock security was breached at the housing unit level and cell level.

43. Alternatively one or more guards on duty preceding the attack on Plaintiff were deliberately indifferent to presence of one or more individuals who should not have been in that housing unit, but did not take reasonable and required action in the face of the known risk, that inmates were in locations in or around the housing area when they should not be there, which is direct notice to a reasonably trained guard of a imminently looming assault.

44. Alternatively, there were insufficient guards to oversee and prevent intruders from harming those in the housing unit, and staff shortages prevented timely response once and assault was or should have been observed by properly staffed observation positions, that would have been staffed but for the staffing shortage.

45. Alternatively, although one or more guards saw the four approaching and entering the cell, or should have seen the four near or in Plaintiff's cell, one or more front line guards or supervisors whose names are not known, turned a blind eye and/or the guard was too busy with other tasks due to the guard shortage, or used the shortage to create a pretext so he would not have to respond to the fight short staffed.

46. Due to the guard shortage caused by the upper management defendants, one or more front line officers and defendants saw the assault, but did not have sufficient staff to respond and prevent serious injury, due to the shortage.

47. Alternatively front line officers or supervisors saw the assault but refused to intervene to prevent further serious injury, and later death, with deliberate indifference to their duty and oath to the Constitution.

48. Upon information and belief, the four inmates who have been indicted for murder,

49. Justin McGhee (Indict. no. SPCR22-02260-J4) Christopher Tyrone Toles, James Robert Pritchett (Indict. no. SPCR22-02259-J4)and Christopher Tyler Bennett (Indict. no. SPCR22-02258-J4), entered the housing unit of Plaintiff and entered the Plaintiff's cell and beat and stabbed him with a knife-like weapon causing him to suffer conscious pain and suffering before his death.

50. The entry into the housing unit, into the cell, the possession of a knife-like weapon, the failure to respond to or prevent the cell entry, and the failure to timely respond to the assult were a direct result of the guard shortage of which upper management was long aware, but as to which they had not offered nor taken a reasonable step to cure, that led to the conditions of a substantial risk of harm by assault by knife like weapon that lead to assault or others and of Plaintiff on December 14, 2021.

Claim III.

51. Claim III is for the wrongful death of Plaintiff, as pursued by the next of kin as established by Georgia law, including Julia Hagans individually, and in her representative capacity, for other next of kin who have not joined this lawsuit, but who would be entitled to their lawful share of the damages for the value of the life of Rufus Lee.

52. Claim III incorporates all of the allegations of Claim II.

53. Claim III also asserts that but for the guard shortage caused by the indifference of the upper management failed response to the know shortage that was causing excessive assaults and substantial risk of harm, there would have been adequate number of guards to respond, who would have time intervened and who would have timely provided medical care.

WHEREFORE, Plaintiffs pray judgment against one or more Defendants, individually or jointly for the following:

 a. Compensatory damages for pre-death pain, suffering, and injuries, as allowed by law, and for the wrongful death of Rufus Lee, i.e. the value of his life as to be shown at trial;

 b. Special damages, as more particularly shown at trial, including medical expenses,

 c. Damages for injuries caused by deprivation of Constitutional rights under the United States Constitution;

 d. Punitive damages against each individual Defendant in their individual capacity;

 e. Reasonable attorney fees, costs and expenses of litigation under 42 U.S.C. § 1988 or under Georgia law for bad faith litigation.

 f. Any other and further relief so ordered.

A JURY TRIAL IS HEREBY REQUESTED.

This 14th day of December, 2023.

        /s/ John P. Batson
        John P. Batson

        Ga. Bar No. 042150
        1104 Milledge Road
        Augusta, GA 30904
        706-737-4040
        jpbatson@aol.com
        Attorney for Plaintiff Julia Hagins

Prepared by:
John P. Batson
Ga. Bar No. 042150
1104 Milledge Road
Augusta, GA 30904
706-737-4040
jpbatson@aol.com