IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JULIA HAGANS, *et al.*, | |
| Plaintiffs, | CIVIL ACTION NO.: 4:23-cv-352 |
| v. | |
| TIMOTHY WARD, *et al.*, | |
| Defendants. | |

**O R D E R**

Plaintiffs filed this lawsuit alleging claims against known and unknown staff at Coastal State Prison and officials with the Georgia Department of Corrections related to the death of Rufus Lee. (See generally doc. 1.) After the only named Defendants filed a Motion to Dismiss, (doc. 8), Plaintiffs responded, (doc. 12), and Defendants replied, (doc. 14). Plaintiffs also filed a "Motion to Stay Motion to Dismiss to Allow Discovery for Factual Detail and to Identify and Add Line Officers by Amendment beyond Usual Scheduling Deadlines," (doc. 13), which the Magistrate Judge denied as moot, (doc. 16). Plaintiffs appealed that Order, (doc. 19), and the Court affirmed the denial, (doc. 21). The Magistrate Judge then granted the Defendants' Motion to Stay pending the resolution of their Motion to Dismiss. (Doc. 22.) The Plaintiffs appealed that Order, too. (Doc. 23.) Discovery deadlines have been stayed pending the appeal. (See doc. 22, pp. 7-8.) The Defendants' Motion to Dismiss, (doc. 8), and the Plaintiffs' appeal of the Order granting the Motion to Stay, (doc. 23), are both ripe for review.

## BACKGROUND[1]

On December 14, 2021, Rufus Lee was attacked and killed by four of his fellow inmates while incarcerated at Coastal State Prison. The inmates entered Lee's housing unit and cell, beat him, and stabbed him with a "knife-like weapon." The four assailants were indicted for murder. Plaintiffs, Julia Hagans in her individual capacity and as the representative of Lee's estate and several of Lee's other family members, filed this lawsuit against Timothy Ward, Commissioner of the Georgia Department of Corrections, Brooks Benton, the Warden of Coastal State Prison, Michael Anderson, Carl Betterson, and Phillip Glenn, Deputy Wardens at Coastal State Prison, and unknown supervisors and "frontline correctional officers" at Coastal State Prison, asserting claims arising from Lee's death. The named Defendants are each sued "individually, as a policy maker and as a supervisor acting under color of state law."

Plaintiffs' factual allegations are sparse and somewhat disorganized. They allege the Georgia Department of Corrections has a "shortage of frontline correctional officers," pointing to media coverage of incidents from Georgia prisons beginning in 2017. (Doc. 1, p. 5.) Plaintiffs believe there are documents that would demonstrate that prior to Lee's assault, the "Defendants"—they do not specify which individuals—were "aware of a high number of assaults, that weapons were coming in through work crews and other means and were being used in assaults, there was a high number of assaults by inmates out of the assigned location, that lock security of housing units and cells was not being maintained causing high assaults . . . ." (Id., p. 6.) They do not specify if this speculative awareness relates to Georgia prisons, generally, or Coastal State Prison. (Id.)

---

[1] The following facts are set forth in Plaintiffs' Complaint, (see generally doc. 1), and are accepted as true for purposes of this Order. Because the Complaint does not cohesively present the facts, the Court provides a general summary of the pertinent facts based on its review of the Complaint.

They assert that Lee had discussed some particular danger, they do not identify what, with a counselor at the prison.  (Id.).

Plaintiffs purport to assert three distinct claims.  (Doc. 1, pp. 6-10.)  The first, identified as "Claim I," alleges that counsel has "tried to get information to provide more specific detail of how acts or failures to act of persons acting under color of law could have caused the challenged assault," but that the investigation and prosecution of the assailants prevented disclosure of those documents.  (Id., p. 6.)  Although Plaintiffs identify reasons their counsel has been unable to collect likely relevant information, they do not identify any theory of recovery or seek any affirmative relief related to those attempts to collect information.  (Id., pp. 6-7.)  Instead, they assert simply "access to evidence to plead plausible claims on the merits and preserve the right to meaningful access to courts," invoking the First Amendment, the Seventh Amendment, and the Fourteenth Amendment of the Constitution.  (Id., p. 2.)  It is unclear what cause of action they purport to be asserting or what specific relief they seek related to Claim I.  (Id., pp. 6-7, 10.)

Claim II appears to assert a myriad of constitutional violations against several unknown defendants pursuant to 42 U.S.C. § 1983.  (Doc. 1, pp. 7-9.)  Hagans, in her representative capacity, alleges that "one or more of the frontline correctional officers and their officer supervisors . . . were deliberately indifferent to substantial risks of harm that caused Rufus Lee to be attacked by four inmates. . . ."  (Id., p. 7.)  She alleges Lee's cell should have been secure, "but for indifference or intentional acts of the defendant unknown officers that caused the creation of the conditions that posed and were a substantial risk of harm" to Lee.  (Id.)  She pleads as various alternative theories that the "unknown supervisors and front line officers" were deliberately indifferent to inmates on work detail "stealing contraband equipment to turn into shanks and knives," and were "turning a blind eye to inmates stealing metal objects that could be

3

used to make shanks and knives," that "supervisor and frontline guards" did not conduct cell searches as frequently as directed and allowed inmates to "anticipate cell searches and hide weapons in other cells or to hide weapons if searched," that some "frontline officers," guards, or supervisors, "turned a blind eye to the inmates' possession of weapons," that some guards on duty preceding the attack on Lee were deliberately indifferent to the presence of individuals who should not have been in Lee's housing unit and did not take any action, that there were insufficient guards to prevent intruders from harming those in Lee's housing unit, that short staffing prevented a timely response to an assault, that unknown guards saw the four offending inmates approach Lee's cell and did not intervene for various reasons, and that the guard shortage resulted in front line officers observing the assault but not intervening. (Id., pp. 7-9.)

As against Defendants Ward, Benton, Anderson, Betterson, and Glenn, Hagans alleges they were "aware of the substantial risk of harm created by the chronic shortage of correctional officers, which allowed inmates on work details to steal and purloin metal objects from work detail, because there were insufficient guards to oversee the safe control of objects that could be turned into weapons." (Doc. 1, p. 7.) Additionally, she alleges that the "[u]pper management defendants were aware that the correctional officer shortage created a substantial risk of danger by the inability to conduct a sufficient number and frequency of cell searches for weapons and other contraband like drugs and cell phones that created a dangers condition of commerce unregulated by the guards leaving inmates to police the disputes of inmate commerce." (Id., p. 8.) Due to this short staffing, "they [it is unclear who "they" is here] knew that housing unit door and sally port security was at substantial risk of causing preventable assaults from the frequent assaults involving instances where lock security was breached at the housing unit level and cell level." (Id.)

Plaintiffs' "Claim III" asserts wrongful death under Georgia law. (Doc. 1, p. 10.) It incorporates all of the allegation from Claim II, and adds, verbatim, "that but for the guard shortage caused by the indifference of the upper management failed response to the know shortage that was causing excessive assaults and substantial risk of harm, there would have been adequate number of guards to respond, who would have time intervened and who would have timely provided medical care." (Id.) Plaintiff seeks compensatory damages, special damages, punitive damages, and attorney's fees. (Id.)

Defendants Ward, Benton, Anderson, Betterson, and Glenn, the only named defendants, move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 8.) They argue Plaintiffs' Complaint fails to allege a § 1983 supervisory Eighth Amendment claim against them, (id., pp. 3-4), Plaintiffs' claim for punitive damages is barred by the Georgia Tort Claims Act, (id., p. 7), and they are all immune from tort liability under Georgia law, (id., pp. 7-8). Plaintiff opposes, (doc. 12), and also appeals the Magistrate Judge's Order staying discovery pending disposition of Defendants' Motion, (doc. 23).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). But this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

5

conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Iqbal, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## DISCUSSION

The Court first addresses Defendants immunity arguments. Defendants argue they are immune from Plaintiffs' state law tort claims under the Georgia Tort Claims Act ("GTCA"). (Doc. 8, p. 7.) O.C.G.A. § 50-21-25(a) provides "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." Defendants contend they are entitled to immunity from Plaintiffs' tort claim under this provision because they "were acting within the scope of their employment with the state at all times relevant to the Complaint." (Doc. 8, p. 7.) Plaintiff does not respond to this argument at all, (see generally doc. 12), arguably waiving any opposition to it. Zarate v.

6

U.S. Att'y Gen., 307 F. App'x 289, 290 (11th Cir. 2009) ("A party . . . waives an issue by failing to make any substantive arguments with respect to that issue." (citing Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989))).  Nevertheless, the Court finds the Defendants' argument meritorious.  See Giummo v. Olsen, 701 F. App'x 922, 925 (11th Cir. 2017) (reversing the district court's decision granting motion to dismiss solely due to the plaintiff's failure to respond and requiring the court to consider the sufficiency of the complaint's allegations and provide a reason why the complaint failed to state a claim).  Plaintiffs expressly named each of the named Defendants "individually, as a policy maker and as a supervisor acting under color of state law."  (Doc. 1, pp. 1-2.)  Because the Defendants undisputedly acted within the scope of their official duties or employment at all times relevant to the Complaint, they are not subject to suit under O.C.G.A. § 50-21-25(a).  See, e.g., Anthony v. Farmer, CV123-095, 2024 WL 2175703, at *3 (S.D. Ga. May 14, 2024) (dismissing state law tort claim against Georgia prison officials under GTCA).  Accordingly, the Defendants' motion is **GRANTED** as to Claim III, (doc. 8), and Plaintiffs' state-law wrongful death claim is **DISMISSED**.

Defendants also argue Plaintiffs' punitive damages claim fails, to the extent such damages are sought under Georgia law, because the GTCA does not allow recovery of punitive damages. (Doc. 8, p. 7.)  Plaintiff's response is also silent on this issue.  (See generally doc. 12.)  The GTCA is the sole remedy for torts committed by a Georgia state officer or employee, and the GTCA provides that "[n]o award for damages under this article shall include punitive or exemplary damages."  O.C.G.A. §§ 50-21-25(a), 50-21-30.  As a result, the Defendants' motion is **GRANTED** as to Plaintiff's claim for punitive damages under state law, (doc. 8), and that claim is **DISMISSED**.

The crux of the parties' briefing focuses on Defendants' contention that Plaintiffs fail to state a § 1983 claim since the allegations implicating them relate to their roles as policy makers and supervisors. (Doc. 8, pp. 3-4.) As Defendants correctly observe, it is well established that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir.1994)); see also Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) ("[Section] 1983 does not provide liability under a theory of respondeat superior."). To hold a supervisory official liable, Plaintiff must demonstrate either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269; see also Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). Plaintiffs' response to the Motion concedes that the named Defendants are all supervisors but insists that they are liable for their own personal participation in the alleged unconstitutional conditions of confinement that led to Lee's killing, and not based on the "supervisory liability causal connection framework." (Doc. 12, p. 1-2.) Plaintiffs argues the named Defendants were each deliberately indifferent to an excessive risk of serious injury from inmate-on-inmate assaults at Coastal State Prison at the time of Lee's assault. (Id., p. 2.)

Prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). And while "officials have a duty to protect prisoners from violence at the hands of other prisoners," Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (alterations adopted) (quoting Farmer, 511 U.S. at 833), "[n]ot every injury suffered by one inmate at the hands of

8

another . . . translates into a constitutional liability for prison officials responsible for the victim's safety," Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted). To sufficiently state an Eighth Amendment deliberate indifference claim, a plaintiff must "allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal citation and quotations omitted).

The Eleventh Circuit recently clarified the standard for an Eighth Amendment deliberate-indifference claim, reaffirming that the plaintiff must demonstrate "as a threshold matter, that he suffered a deprivation that was, objectively, sufficiently serious," and second, "that the defendant acted with subject recklessness as used in the criminal law." Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (internal citations and quotations omitted). The first, objective component requires a plaintiff to "allege conditions that were sufficiently serious to violate the Eighth Amendment, i.e., conditions that were extreme and posed an unreasonable risk of serious injury to [an inmate's] future health or safety." Lane, 835 F.3d at 1307. The second, subjective component requires Plaintiffs to show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." Wade, 106 F.4th at 1261. Additionally, even if the defendant actually knew of a substantial risk, he cannot be found liable if he responded reasonably to the risk. Id. at 1262. This standard is, as the Eleventh Circuit has put it, "onerous." Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013).

Plaintiffs contend their Complaint alleges a sufficiently serious risk of inmate-on-inmate assaults at Coastal State Prison in December 2021 because of "pervasive understaffing causing (1) inadequate supervision of inmates, (2) inmates' ready access to material for weapons, and (3) an inability to keep cells and housing units safely locked." (Doc. 12, p. 3.) A review of the

Complaint reveals, however, that most of Plaintiffs' allegations of "chronic" understaffing relate not to Coastal State Prison, but to the Georgia Department of Corrections generally. (Doc. 1, p. 5.) The factual allegations relate, primarily, to news coverage of GDC prisons "across the state," the prison system, generally, and a specific riot at a different GDC prison. (Id.) Plaintiff also speculates that "they," referring to unspecified "Defendants," were aware of a high number of assaults, of weapons "coming in through work crews," and of "lock security of housing units and cells . . . not being maintained." (Id., p. 6.) It is unclear from the Complaint if these speculative allegations relate to these conditions at GDOC prisons, generally, or at Coastal State Prison, specifically. (Id.) Given the ambiguity, the allegations of Plaintiffs' Complaint are insufficient to allege a substantial risk of serious harm *at Coastal State Prison* at the time of Lee's attack. Defendants point to this Court's determination, in Diaz v. Ward, CV622-080, 2023 WL 6297484, at *5-*6 (S.D. Ga. Sept. 27, 2023), that the absence of allegations linking a history of violence and other problems at GDOC prisons to the named Supervisor Defendants or to the plaintiff's incident was fatal to that plaintiff's § 1983 deliberate indifference claim. As in Diaz, Plaintiffs' allegations "about the GDOC as a whole" are "too generalized of a jump" to state a claim for deliberate indifference against the named Defendants for Mr. Lee's incident at Coastal State Prison. Id.

Plaintiffs' response refers to additional news coverage of state-wide prison understaffing, pointing to articles from the Atlanta Journal Constitution about "[p]ervasive and severe understaffing of correctional officers." (Doc. 12, p. 4.) Plaintiffs ask the Court to "take judicial notice" of these newspaper articles. (Id., p. 4 n. 4.) In response, Defendants identify persuasive authority from the Northern District of Alabama that the Court may not take judicial notice of the factual accuracy of the news articles, (doc. 14, p. 6 n. 2 (citing White v. City of Birmingham, 96 F. Supp. 3d 1260, 1269 (N.D. Ala. 2015))), and because the articles were not referenced in

Plaintiffs' Complaint they are not appropriate for the Court to consider in determining the sufficiency of that pleading. As a general rule, courts in the Eleventh Circuit "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). Plaintiffs' reference to news articles or other new information in their response is also problematic because "a complaint may not be amended by briefs in opposition to a motion to dismiss." McKally v. Perez, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015). The Court is, therefore, not authorized to consider these extraneous news articles in determining the sufficiency of Plaintiffs' allegations. Moreover, even if the Court considered the new material, it suffers from the same problem as the original pleading's allegations—the articles reference understaffing and inmate-on-inmate violence at prisons "throughout the State," not specifically at Coastal State Prison. (Doc. 12, p. 3.)

Plaintiffs are correct that, in some cases, specific allegations of "widespread inmate-on-inmate abuse" are sufficient to demonstrate a sufficiently serious risk of serious harm to satisfy the objective component of the analysis. See Dickinson v. Cochran, 833 F. App'x 268, 272 (11th Cir. 2020); Lane, 835 F.3d at 1307-08. But even if Plaintiffs' allegations about the state-wide conditions in Georgia prisons were sufficient to meet the objective component in this case, Plaintiffs' Complaint would still fail to meet the second, subjective component of deliberate indifference against the named Defendants. Plaintiffs' response relies on these Defendants' "job functions as supervisors" to infer their knowledge of the dangerous conditions. (Doc. 12, pp. 6-7.) The standard demands more. Defendants cite compellingly to Cox v. Ward, NO. 5:22-CV-00008-MTT-CHW, 2023 WL 5158953, at *3 (M.D. Ga. July 20, 2023), where the Middle District of Georgia found a plaintiff's "allegations about understaffing and resulting high levels of inmate

violence" insufficient to state a claim for deliberate indifference, since those allegations "might raise a claim [for] negligence or 'dereliction of duty' but do not amount to deliberate indifference to a known risk of specific harm." Id. (citing Goodman, 718 F.3d at 1332-33). As this Court explained in Diaz, discussed above, "[i]n general, a plaintiff must show more than a generalized awareness of risk to make out a deliberate-indifference claim." 2023 WL 6297484, at *6 (internal citation and quotations omitted). Plaintiffs' allegations do not satisfy the subjective component of the deliberate indifference standard. Therefore, Defendants' Motion to Dismiss Claim II against them is also **GRANTED**, and Claim II is **DISMISSED**. Because, as Defendants point out, Claim I "is not a cause of action for deprivation of Constitutional rights against any named Defendant," (doc. 8, p. 1), and because Claim II and Claim III as against the named Defendants are dismissed, Timothy Ward, Brooks Benton, Michael Anderson, Carl Betterson and Phillip Glenn are **DISMISSED**.

That leaves the unknown "Supervisor John and Jane Does" and "Frontline correctional officer John and Jane Does" referenced in Plaintiffs' Complaint. (See doc. 1, p. 2, 5.) The Magistrate Judge, in granting the named Defendants' Motion to Stay, correctly identified Eleventh Circuit law governing "John Doe pleading." (Doc. 22, pp. 6-7.) The Magistrate Judge found that Plaintiffs' desire to conduct discovery to permit them to identify the unnamed John and Jane Doe Defendants was insufficient to overcome the named Defendants' showing of good cause for a stay pending resolution of their Motion to Dismiss. (Id., p. 7.) That determination was neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a). Nevertheless, now that the Motion to Dismiss has been resolved, the stay pending its disposition is lifted and the appeal of the stay is **DISMISSED AS MOOT**. (Doc. 23.)

12

"As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); see also Vielma v. Gruler, 808 F. App'x 872, 880 (11th Cir. 2020). A limited exception to this rule exists "when the plaintiff's description of the defendant is so specific as to [make the 'John Doe' label] 'at the very worst, surplusage,' " and thus discovery would uncover the unnamed defendant's identity. Richardson, 598 F.3d at 738 (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)); Vielma, 808 F. App'x at 880. Plaintiffs' appeal challenging the Magistrate Judge's imposition of the stay asserts their Complaint "construed as a whole . . . has sufficient detail about the acts and refusals to follow corrections security duties, for defendants to identify by name the front line guards, floor supervisors, and up to management, who can be said to have plausibly caused one or more of the conditions of substantial risk of harm . . . ." (Doc. 23, p. 2.) However, a review of Plaintiffs' allegations against the unidentified "frontline correctional officers and their officer supervisors," shows that the John and Jane Doe Defendants are not described with any specificity whatsoever. (Doc. 1, pp. 5, 7-9.) These "[b]are descriptions and conclusory allegations do not equate to the real possibility that these unknown individuals' identities will be revealed during discovery, and the Court will not enable a fishing expedition on account of Plaintiff[s'] use of placeholders." Turner v. Martin, 521 F. Supp. 3d 1310, 1323 (S.D. Ga. 2021) (internal citations and quotations omitted). Compounding Plaintiffs' problem, the 90-day deadline for service under Federal Rule of Civil Procedure 4(m) expired in March 2024, several months before the Magistrate Judge stayed discovery. (See doc. 1 (filed December 14, 2023); doc. 22 (stay entered September 10, 2024).) Plaintiffs' allegations against the fictitiously-named Defendants fail to describe them "with enough specificity to enable service of process," and "fall well short of enabling a process server to identify a specific individual." Vielma, 808 F. App'x at 880. Therefore, Plaintiffs are **DIRECTED** to

13

**SHOW CAUSE** why the fictitiously-named "Supervisor John and Jane Does" and "Frontline correctional officer John and Jane Does" should not be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Timothy Ward, Brooks Benton, Michael Anderson, Carl Betterson, and Phillip Glenn's Motion to Dismiss is **GRANTED**. (Doc. 8.) The Court **DISMISSES** all claims against these Defendants and directs the Clerk of Court to update the docket accordingly. The Clerk is **DIRECTED** to **LIFT** the Stay. (Doc. 22.) Plaintiffs' appeal of the Magistrate Judge's Order granting the Defendants' Motion to Stay is **DISMISSED AS MOOT**. (Doc. 23.) Plaintiffs are **DIRECTED** to **SHOW CAUSE WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER** why their claims against the "Supervisor John and Jane Does" and "Frontline correctional officer John and Jane Does" should not be dismissed.

**SO ORDERED**, this 21st day of May, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA